# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| FIREMEN'S RETIREMENT SYSTEM OF ST. LOUIS, Derivatively on Behalf of UNITEDHEALTH GROUP INCORPORATED, | Case No. |
| Plaintiff, | VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF SECURITIES LAW, BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT |
| v. | |
| STEPHEN J. HEMSLEY, DAVID S. WICHMANN, RICHARD T. BURKE, WILLIAM C. BALLARD, JR., MICHELE J. HOOPER, RODGER A. LAWSON, GLENN M. RENWICK, KENNETH I. SHINE, GAIL R. WILENSKY, WILLIAM W. MCGUIRE, GEORGE L. MIKAN III, PATRICK J. ERLANDSON, ROBERT J. DARRETTA, JAMES A. JOHNSON, THOMAS H. KEAN, MARY O. MUNDINGER, ROBERT L. RYAN, DONNA E. SHALALA, and WILLIAM G. SPEARS, | |
| Defendants, | |
| -and- | |
| UNITEDHEALTH GROUP INCORPORATED, a Delaware corporation, | |
| Nominal Defendant. | DEMAND FOR JURY TRIAL |

Plaintiff, by its attorneys, submits this Verified Stockholder Derivative Complaint for violation of securities law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment.  Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to plaintiff which are based on personal knowledge. This complaint is also based on the investigation of plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of news reports, press releases, and other publicly available sources.

## NATURE AND SUMMARY OF THE ACTION

1.     This is a stockholder derivative action brought by plaintiff on behalf of nominal defendant UnitedHealth Group Incorporated ("UnitedHealth" or the "Company") against certain of its officers and directors for violation of securities law, breach of fiduciary duty, waste of corporate assets, and unjust enrichment.  These wrongs resulted in potentially hundreds of millions of dollars in damages to UnitedHealth's reputation, goodwill, and standing in the business community.  Moreover, these actions have exposed the Company to billions of dollars in potential liability for violations of state and federal law, including the False Claims Act ("FCA"), 31 U.S.C. §§3729-3733.

2.     UnitedHealth, a diversified health and well-being company, provides health care benefits to an array of customers and markets.  The Company is the largest Medicare Advantage Organization ("MA Organization") in the United States, and receives billions of taxpayer dollars each year from the Centers for Medicare and Medicaid Services ("CMS") to provide managed healthcare to Medicare beneficiaries enrolled in the

Company's Medicare Advantage Plans ("MA Plans").

3.     Medicare Advantage is a type of health insurance program within Part C of Medicare.  Medicare Advantage provides a managed health care plan that is paid based on a monthly capitated fee[1] as an alternative to traditional fee-for-service option. Specifically, Medicare pays MA Organizations (such as UnitedHealth) using a complex formula called a "risk score," which is supposed to pay higher rates for sicker patients than for people in good health.  For example, a depression diagnosis that is reclassified as a "major" depression would receive a higher risk score.  Higher risk scores, in turn, generate increased risk adjustment monthly payments by the federal government.

4.     On February 15, 2017, the U.S. Department of Justice ("DOJ") revealed for the first time that for *more than a decade* UnitedHealth has been fraudulently manipulating patients' risk scores to make patients appear sicker than they actually were in order to wrongfully collect higher Medicare payments than the Company deserved. The DOJ further revealed that it had been investigating UnitedHealth's billing practices for at least five years based on a whistleblower case alleging that UnitedHealth repeatedly violated the FCA in connection with its fraudulent billing practices.  The FCA case was filed under seal in 2011 by Benjamin Poehling (the "Poehling Complaint"),[2] the

---

[1] "Capitation" is a payment arrangement for health care services that pays a physician or group of physicians a set amount for each enrolled person assigned to them, per period of time, whether or not that person seeks care.

[2] The Poehling Complaint was initially filed in the U.S. District Court for Western District of New York, and thereafter transferred to the United States District Court for the Central District of California.

director of finance for UnitedHealth's subsidiary, UnitedHealthcare Medicare & Retirement.   The DOJ also disclosed that it intervened in Mr. Poehling's above noted FCA suit against UnitedHealth, with the intention of bringing an action against UnitedHealth for FCA violations.

5.      In May 2017, the DOJ intervened in a second related FCA suit against UnitedHealth that was originally filed under seal in 2009 by whistleblower James M. Swoben (the "Swoben Complaint"),[3] a former employee of Senior Care Action Network ("SCAN") Health Plan and a consultant to the risk adjustment industry.   The same month, the DOJ filed two separate complaints against UnitedHealth for violations of the FCA, based on the whistleblower claims of Mr. Poehling and Mr. Swoben and the DOJ's own years-long investigations.

6.      According to the DOJ, the government has "conservatively estimated" that as a result of the Individual Defendants' (as defined herein) scheme to improperly obtain or avoid returning payments under the MA Plans, UnitedHealth "knowingly and improperly avoided repaying Medicare for *at least over a billion dollars* in risk adjustment payments to which it was not entitled."   Pursuant to the FCA, the DOJ seeks treble damages, plus a civil penalty for *each* of the Company's hundreds of thousands of FCA violations.

---

[3] The Swoben Complaint was filed in the U.S. District Court for the Central District of California.

7.     None of the wrongdoing described herein would have been possible without the UnitedHealth Board of Directors' (the "Board") tacit approval or willingness to turn a blind eye.  As explained herein, UnitedHealth's senior management engaged in these acts because: (i) UnitedHealth suffered a far-reaching, systemic breakdown in corporate governance spanning more than a decade; (ii) the Board failed to implement basic systems of internal controls over UnitedHealth's regulatory and compliance requirements; and (iii) the Board failed to implement a meaningful reporting system to adequately inform itself of massive and pervasive illegal practices.

8.     To make matters worse, in 2015 and 2016, the Individual Defendants issued materially misleading proxy statements urging stockholders to vote to reelect the directors.  In seeking stockholder votes in accord with the Board's recommendations, each of the proxy statements omitted material information concerning, among other things: (i) the Company's rampant illegal Medicare billing; (ii) the Company's inadequate internal controls; and (iii) the Company's wrongfully inflated revenues and earnings that the government would ultimately seek to recoup.

9.     Plaintiff brings this action against the Individual Defendants to repair the harm that they caused with their faithless actions.

## JURISDICTION AND VENUE

10.     Pursuant to 28 U.S.C. §1331 and section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), this Court has jurisdiction over the claims asserted herein for violations of section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated

thereunder.  This Court has supplemented jurisdiction over the remaining claims under 28 U.S.C. §1367.

11.     This Court also has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this Court in accordance with 28 U.S.C. §1391 because: (i) UnitedHealth maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to UnitedHealth, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

13.     Plaintiff Firemen's Retirement Fund of St. Louis was a stockholder of UnitedHealth at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current UnitedHealth stockholder.

**Nominal Defendant**

14.     Nominal Defendant UnitedHealth is a Delaware corporation with principal executive offices located at UnitedHealth Group Center, 9900 Bren Road East, Minnetonka, Minnesota.  UnitedHealth is a health care company that operates through its diversified family of businesses.  UnitedHealth has two distinct, but strategically aligned business platforms: health benefits operating under UnitedHealthcare and health services operating under Optum.  As of December 31, 2016, UnitedHealth employed more than 230,000 individuals.

**Defendants**

15.     Defendant Stephen J. Hemsley ("Hemsley") is UnitedHealth's Chief Executive Officer ("CEO") and has been since November 2006, and a director and has been since February 2000.  Defendant Hemsley was also UnitedHealth's President from May 1999 to November 2014; Chief Operating Officer from September 1998 to November 2006; and Senior Executive Vice President from May 1997 to September 1998.  Defendant Hemsley knowingly, recklessly, or with gross negligence caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.  Defendant Hemsley also negligently violated section 14(a) of the Exchange Act by causing UnitedHealth to make misleading statements in its 2015 and 2016 proxy statements.  UnitedHealth paid defendant Hemsley the following compensation as an executive:

| Year | Salary | Bonus | Other Annual Compensation | Stock Awards | Option Awards | Non-Equity Incentive Plan | Non-Qualified Deferred Compensation Earnings | All Other Compensation | Performance (LTIP) Award Payouts | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 2016 | $1,300,000 | - | - | $7,012,640 | $2,337,015 | $4,908,500 | $2,070,099 | $137,358 | - | $17,765,612 |
| 2015 | $1,350,000 | - | - | $7,012,546 | $2,337,939 | $3,672,000 | - | $145,679 | - | $14,518,164 |
| 2014 | $1,300,000 | - | - | $7,625,114 | $1,874,728 | $3,949,000 | - | $107,479 | - | $14,856,321 |
| 2013 | $1,300,000 | - | - | $5,625,019 | $1,875,011 | $3,100,000 | - | $173,254 | - | $12,073,284 |
| 2012 | $1,300,000 | - | - | $7,000,012 | - | $5,300,000 | - | $287,443 | - | $13,887,455 |
| 2011 | $1,300,000 | - | - | $7,000,028 | - | $4,940,000 | - | $154,804 | - | $13,394,832 |
| 2010 | $1,300,000 | - | - | $4,500,045 | $1,500,007 | $3,400,000 | - | $110,079 | - | $10,810,131 |
| 2009 | $1,300,000 | - | - | $4,122,694 | $1,442,306 | $1,950,000 | - | $86,916 | - | $8,901,916 |
| 2008 | $1,300,000 | - | - | - | - | $1,822,019 | - | $119,023 | - | $3,241,042 |
| 2007 | $1,300,000 | - | - | - | - | $3,635,000 | - | $94,838 | - | $5,029,838 |
| 2006 | $1,019,615 | - | - | - | $11,290,311 | $2,875,000 | $257,229 | $106,873 | - | $15,549,028 |
| 2005 | $1,000,000 | $2,452,000 | $92,706 | - | 1,200,000 | - | - | $161,164 | $1,010,000 | $4,715,870 |

16.     Defendant David S. Wichmann ("Wichmann") is UnitedHealth's President and has been since November 2014.  Defendant Wichmann was also UnitedHealth's Chief Financial Officer ("CFO") from January 2011 to June 2016; and Executive Vice President and President of UnitedHealth Group Operations from April 2008 to November 2014.  Defendant Wichmann knowingly, recklessly, or with gross negligence caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.   UnitedHealth paid defendant Wichmann the following compensation as an executive:

| Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan | All Other Compensation | Total |
|---|---|---|---|---|---|---|
| 2016 | $1,100,000 | $4,950,066 | $1,649,664 | $4,474,500 | $142,216 | $12,316,446 |
| 2015 | $1,150,000 | $4,950,071 | $1,650,322 | $3,686,700 | $144,724 | $11,581,817 |
| 2014 | $900,000 | $6,375,123 | $1,124,841 | $3,643,102 | $99,499 | $12,142,565 |
| 2013 | $892,885 | $3,375,092 | $1,125,003 | $2,608,526 | $114,061 | $8,115,567 |
| 2012 | $850,000 | $4,500,074 | - | $3,044,230 | $106,549 | $8,500,853 |
| 2011 | $832,692 | $7,000,070 | - | $2,794,200 | $84,212 | $10,711,174 |
| 2008 | $696,058 | $176,982 | $2,838,223 | $875,000 | $52,607 | $4,638,870 |
| 2007 | $675,000 | - | $2,774,954 | $1,282,000 | $38,601 | $4,770,555 |

| 2006 | $496,693 | - | $2,584,633 | $1,081,000 | $32,359 | $4,194,685 |

17.    Defendant Richard T. Burke ("Burke") is UnitedHealth's Non-Executive Chairman of the Board and has been since October 2006, and a director and has been since 1977.    Defendant Burke was also the CEO of UnitedHealthcare, Inc., UnitedHealth's predecessor corporation, from 1977 to 1988.  Defendant Burke founded the Company in 1977.  Defendant Burke is also a member of UnitedHealth's Audit Committee and has been since at least April 2017.  Defendant Burke was a member of UnitedHealth's Independent Committee from at least April 2007 to at least April 2008. Defendant Burke knowingly or recklessly caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.  Defendant Burke also negligently violated section 14(a) of the Exchange Act by causing UnitedHealth to make misleading statements in its 2015 and 2016 proxy statements.    UnitedHealth paid defendant Burke the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2016 | $425,000 | $175,142 | - | $24,632 | $624,774 |
| 2015 | $425,000 | $156,528 | - | $24,177 | $605,705 |
| 2014 | $425,000 | $150,097 | - | $23,736 | $598,833 |
| 2013 | $425,000 | $150,093 | - | $26,423 | $601,516 |
| 2012 | $425,000 | $150,149 | - | $26,031 | $601,180 |
| 2011 | $425,000 | $150,060 | - | $25,892 | $600,952 |
| 2010 | $425,000 | $150,065 | - | $25,840 | $600,905 |
| 2009 | $392,500 | $37,676 | $141,500 | $327,644 | $899,320 |
| 2008 | $363,000 | - | $201,965 | $7,387 | $572,352 |
| 2007 | $362,000 | - | $269,184 | $6,424 | $637,608 |

| 2006 | $169,000 | - | $412,868 | $6,296 | $588,164 |

18.     Defendant William C. Ballard, Jr. ("Ballard") is a UnitedHealth director and has been since 1993.  Defendant Ballard was also the Chairman of UnitedHealth's Audit Committee and a member of that committee from at least April 2005 to at least April 2012.  Defendant Ballard knowingly or recklessly caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.  Defendant Ballard also negligently violated section 14(a) of the Exchange Act by causing UnitedHealth to make misleading statements in its 2015 and 2016 proxy statements.   UnitedHealth paid defendant Ballard the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2016 | $125,000 | $175,142 | - | $18,000 | $318,142 |
| 2015 | $125,000 | $156,528 | - | $18,000 | $299,528 |
| 2014 | $125,000 | $150,097 | - | $18,000 | $293,097 |
| 2013 | $125,000 | $150,093 | - | $17,500 | $292,593 |
| 2012 | $136,250 | $150,149 | - | $17,500 | $303,899 |
| 2011 | $140,000 | $150,060 | - | $17,500 | $307,560 |
| 2010 | $140,000 | $150,065 | - | $17,500 | $307,565 |
| 2009 | $100,500 | $37,507 | $141,500 | $2,500 | $282,007 |
| 2008 | $67,500 | - | $189,206 | - | $256,706 |
| 2007 | $67,000 | - | $267,133 | - | $334,133 |
| 2006 | $88,500 | - | $408,820 | - | $497,320 |

19.     Defendant Michele J. Hooper ("Hooper") is a UnitedHealth director and has been since October 2007.  Defendant Hooper is also a member of UnitedHealth's Audit Committee and has been since at least April 2013.  Defendant Hooper was a member of UnitedHealth's Public Policy Strategies and Responsibility Committee from at least April

2009 to at least April 2012.   Defendant Hooper knowingly or recklessly caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.   Defendant Hooper also negligently violated section 14(a) of the Exchange Act by causing UnitedHealth to make misleading statements in its 2015 and 2016 proxy statements.   UnitedHealth paid defendant Hooper the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2016 | $140,000 | $175,142 | - | $18,490 | $333,632 |
| 2015 | $140,000 | $156,528 | - | $18,490 | $315,018 |
| 2014 | $140,000 | $150,097 | - | $18,490 | $308,587 |
| 2013 | $135,000 | $150,093 | - | $17,808 | $302,901 |
| 2012 | $135,000 | $150,149 | - | $17,465 | $302,614 |
| 2011 | $135,000 | $150,060 | - | $16,380 | $301,440 |
| 2010 | $135,000 | $150,065 | - | $17,339 | $302,404 |
| 2009 | $94,500 | $37,676 | $141,500 | $2,925 | $276,601 |
| 2008 | $65,250 | $75,864 | $189,206 | - | $330,320 |
| 2007 | $5,136 | $12,704 | - | - | $17,840 |

20.   Defendant Rodger A. Lawson ("Lawson") is a UnitedHealth director and has been since February 2011.   Defendant Lawson knowingly or recklessly caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.   Defendant Lawson also negligently violated section 14(a) of the Exchange Act by causing UnitedHealth to make misleading statements in its 2015 and 2016 proxy statements.   UnitedHealth paid defendant Lawson

the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2016 | $145,000 | $175,142 | $24,642 | $344,784 |
| 2015 | $145,000 | $156,528 | $24,159 | $325,687 |
| 2014 | $140,000 | $150,097 | $23,679 | $313,776 |
| 2013 | $129,822 | $150,093 | $23,686 | $303,601 |
| 2012 | $125,000 | $150,149 | $31,713 | $306,862 |
| 2011 | $80,625 | $359,091 | $23,178 | $462,894 |

21.   Defendant Glenn M. Renwick ("Renwick") is a UnitedHealth director and has been since June 2008.  Defendant Renwick is also the Chairman of UnitedHealth's Audit Committee and has been since at least April 2013, and a member of that committee and has been since at least April 2009.  Defendant Renwick knowingly or recklessly caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.  Defendant Renwick also negligently violated section 14(a) of the Exchange Act by causing UnitedHealth to make misleading statements in its 2015 and 2016 proxy statements. UnitedHealth paid defendant Renwick the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2016 | - | $325,189 | - | $18,000 | $343,189 |
| 2015 | $150,000 | $156,424 | - | $18,000 | $324,424 |
| 2014 | $147,500 | $150,351 | - | $18,000 | $315,851 |
| 2013 | $140,000 | $150,099 | - | $17,500 | $307,599 |
| 2012 | $128,750 | $150,098 | - | $17,500 | $296,348 |
| 2011 | $125,000 | $150,053 | - | $17,500 | $292,553 |
| 2010 | $125,000 | $150,053 | - | $17,500 | $292,553 |
| 2009 | $90,500 | $37,676 | $141,500 | $2,500 | $272,176 |
| 2008 | $33,400 | $15,443 | $65,840 | - | $114,683 |

22.     Defendant Kenneth I. Shine ("Shine") is a UnitedHealth director and has been since February 2009.  Defendant Shine is also a member of UnitedHealth's Public Policy Strategies and Responsibility Committee and has been since February 2009. Defendant Shine knowingly or recklessly caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.  Defendant Shine also negligently violated section 14(a) of the Exchange Act by causing UnitedHealth to make misleading statements in its 2015 and 2016 proxy statements.    UnitedHealth paid defendant Shine the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2016 | $125,000 | $175,142 | - | $18,000 | $318,142 |
| 2015 | $125,000 | $156,528 | - | $18,000 | $299,528 |
| 2014 | $125,000 | $150,097 | - | $16,500 | $291,597 |
| 2013 | $125,000 | $150,093 | - | $17,500 | $292,593 |
| 2012 | $125,000 | $150,149 | - | $17,500 | $292,649 |
| 2011 | $125,000 | $150,067 | - | $17,500 | $292,567 |
| 2010 | $125,000 | $150,075 | - | $17,500 | $292,575 |
| 2009 | $80,250 | $223,382 | $70,572 | - | $374,204 |

23.     Defendant Gail R. Wilensky ("Wilensky") is a UnitedHealth director and has been since 1993.  Defendant Wilensky is also the Chairman of UnitedHealth's Public Policy Strategies and Responsibility Committee and a member of that committee and has been since at least April 2009.  Defendant Wilensky was the Chairman of UnitedHealth's Compliance and Government Affairs Committee and a member of that committee from at least April 2005 to at least April 2006.  Defendant Wilensky knowingly or recklessly

caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.   Defendant Wilensky also negligently violated section 14(a) of the Exchange Act by causing UnitedHealth to make misleading statements in its 2015 and 2016 proxy statements. UnitedHealth paid defendant Wilensky the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2016 | $140,000 | $175,280 | - | $18,000 | $333,280 |
| 2015 | $140,000 | $156,528 | - | $18,000 | $314,528 |
| 2014 | $140,000 | $150,097 | - | $18,000 | $308,097 |
| 2013 | $135,000 | $150,093 | - | $17,500 | $302,593 |
| 2012 | $135,000 | $150,149 | - | $17,500 | $302,649 |
| 2011 | $135,000 | $150,060 | - | $17,500 | $302,560 |
| 2010 | $135,000 | $150,065 | - | $17,500 | $302,565 |
| 2009 | $97,000 | $37,507 | $147,203 | $2,500 | $284,210 |
| 2008 | $59,660 | - | $194,018 | - | $253,678 |
| 2007 | $54,500 | - | $268,091 | - | $322,591 |
| 2006 | $70,750 | - | $410,818 | - | $481,568 |

24.    Defendant William W. McGuire ("McGuire") was UnitedHealth's CEO from February 1991 to November 2006; Chairman of the Board from May 1991 to October 2006; a director from February 1989 to October 2006; Chief Operating Officer from May 1989 to June 1995; President from November 1989 to May 1999; and Executive Vice President in at least November 1988.  Defendant McGuire knowingly, recklessly, or with gross negligence caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate

Medicare related revenues.   UnitedHealth paid defendant McGuire the following compensation as an executive:

| Year | Salary | Bonus | Other Annual Compensation | Option Awards | Non-Qualified Deferred Compensation Earnings | All Other Compensation | Performance (LTIP) Award Payouts | Total |
|---|---|---|---|---|---|---|---|---|
| 2006 | $2,146,923 | - | - | $9,409,277 | $16,185 | $477,314 | - | $12,049,699 |
| 2005 | $2,200,000 | $5,808,000 | $279,502 | 2,600,000 | - | $412,940 | $1,997,000 | $10,697,442 |

25.     Defendant George L. Mikan III ("Mikan") was UnitedHealth's CFO from November 2006 to January 2011; Executive Vice President from November 2006 to February 2012; CEO of Health Services from January 2011 to February 2012; Senior Vice President of Finance from February 2006 to November 2006; and CFO for the UnitedHealthcare division and President of UnitedHealth Networks from June 2004 to February 2006.  Defendant Mikan knowingly, recklessly, or with gross negligence caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.   UnitedHealth paid defendant Mikan the following compensation as an executive:

| Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan | All Other Compensation | Total |
|---|---|---|---|---|---|---|
| 2010 | $700,000 | $3,000,063 | $1,000,004 | $1,400,000 | $87,264 | $6,187,331 |
| 2009 | $700,000 | $2,748,471 | $746,605 | $1,240,000 | $321,314 | $5,756,390 |
| 2008 | $692,115 | $1,237,181 | $1,912,198 | $1,750,000 | $1,137,362 | $6,728,856 |
| 2007 | $650,000 | - | $4,063,500 | $1,282,000 | $71,874 | $6,067,374 |
| 2006 | $445,809 | - | $2,123,277 | $748,000 | $22,192 | $3,339,278 |

26.     Defendant Patrick J. Erlandson ("Erlandson") was UnitedHealth's CFO from January 2001 to November 2006; Chief Accounting Officer from September 1998

to at least November 2005; Controller in at least September 1998; and Vice President of Process, Planning, and Information Channels in at least 1997.  Defendant Erlandson knowingly, recklessly, or with gross negligence caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.  UnitedHealth paid defendant Erlandson the following compensation as an executive:

| Year | Salary | Option Awards | All Other Compensation | Total |
|------|--------|---------------|------------------------|-------|
| 2006 | $465,000 | $2,300,469 | $16,673 | $2,782,142 |

27.  Defendant Robert J. Darretta ("Darretta") was a UnitedHealth director from April 2007 to June 2017.  Defendant Darretta was also a member of UnitedHealth's Audit Committee at least April 2008 to at least April 2017.  Defendant Darretta knowingly or recklessly caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues. Defendant Darretta also negligently violated section 14(a) of the Exchange Act by causing UnitedHealth to make misleading statements in its 2015 and 2016 proxy statements.  UnitedHealth paid defendant Darretta the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2016 | - | $300,234 | - | - | $300,234 |
| 2015 | $125,000 | $156,602 | - | - | $281,602 |
| 2014 | $125,000 | $150,123 | - | $3,000 | $278,123 |
| 2013 | $125,000 | $150,120 | - | $2,500 | $277,620 |
| 2012 | $125,000 | $150,065 | - | $2,500 | $277,565 |
| 2011 | $125,000 | $150,053 | - | $2,500 | $277,553 |
| 2010 | $125,000 | $150,053 | - | $2,500 | $277,553 |
| 2009 | $92,500 | $37,676 | $141,500 | $2,500 | $274,176 |
| 2008 | $62,500 | $43,626 | $234,048 | - | $340,174 |
| 2007 | $42,432 | $31,090 | $148,709 | - | $222,231 |

28.     Defendant James A. Johnson ("Johnson") was a UnitedHealth director from 1993 to June 2008.  Defendant Johnson was also the Chairman of UnitedHealth's Independent Committee, a member of that committee from at least 2006 to at least April 2008; and a member of the Audit Committee from at least April 2007 to at least April 2008.  Defendant Johnson was the Chairman of UnitedHealth's Public Policy Strategies and Responsibility Committee and a member of that committee in at least April 2008.  Defendant Johnson knowingly or recklessly caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.   UnitedHealth paid defendant Johnson the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2008 | $20,450 | $139,114 | $50,000 | $209,564 |
| 2007 | $65,250 | $269,163 | - | $334,413 |
| 2006 | $98,750 | $413,139 | - | $511,889 |

29.    Defendant Thomas H. Kean ("Kean") was a UnitedHealth director from 1993 to June 2008.  Defendant Kean was also a member of UnitedHealth's Public Policy Strategies and Responsibility Committee from at least April 2007 to at least April 2008; Chairman of that committee in at least April 2007; and a member of the Audit Committee from at least April 2005 to at least April 2006.  Defendant Kean knowingly or recklessly caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.  UnitedHealth paid defendant Kean the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2008 | $24,950 | $139,114 | $100,000 | $264,064 |
| 2007 | $60,000 | $269,147 | $50,000 | $379,147 |
| 2006 | $73,000 | $412,680 | $50,000 | $535,680 |

30.    Defendant Mary O. Mundinger ("Mundinger") was a UnitedHealth director from 1997 to June 2008.  Defendant Mundinger was also a member of UnitedHealth's Public Policy Strategies and Responsibility Committee in at least April 2008.  Defendant Mundinger knowingly or recklessly caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.  UnitedHealth paid defendant Mundinger the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | All Other Compensation | Total |
| --- | --- | --- | --- | --- |
| 2008 | $22,450 | $139,663 | $50,000 | $212,113 |
| 2007 | $60,500 | $269,147 | - | $329,647 |
| 2006 | $73,750 | $412,575 | - | $486,325 |

31.     Defendant Robert L. Ryan ("Ryan") was a UnitedHealth director from 1996 to June 2008.  Defendant Ryan was also a member of UnitedHealth's Public Policy Strategies and Responsibility Committee from at least April 2007 to at least April 2008, and a member of the Compliance and Government Affairs Committee in at least April 2005.  Defendant Ryan knowingly or recklessly caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.     UnitedHealth paid defendant Ryan the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | All Other Compensation | Total |
| --- | --- | --- | --- | --- |
| 2008 | $26,700 | $139,401 | $50,000 | $216,101 |
| 2007 | $58,250 | $269,147 | - | $327,397 |
| 2006 | $72,750 | $412,497 | - | $485,247 |

32.     Defendant Donna E. Shalala ("Shalala") was a UnitedHealth director from 2001 to May 2007.  Defendant Shalala was also a member of UnitedHealth's Compliance and Government Affairs Committee from at least April 2005 to at least April 2006, and a member of the Public Policy Strategies and Responsibility Committee in at least April 2007.  Defendant Shalala knowingly or recklessly caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare

billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.   UnitedHealth paid defendant Shalala the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | Total |
|---|---|---|---|
| 2007 | $25,113 | $182,431 | $207,544 |
| 2006 | $67,500 | $408,820 | $476,320 |

33.   Defendant William G. Spears ("Spears") was a UnitedHealth director from 1991 to October 2006.   Defendant Spears knowingly or recklessly caused or allowed UnitedHealth to: (i) operate for years without adequate compliance programs to ensure proper Medicare billing; (ii) implement so-called compliance programs that were actually designed to overbill Medicare; (iii) engage in rampant fraudulent Medicare billing; and (iv) overstate Medicare related revenues.   UnitedHealth paid defendant Spears the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | Total |
|---|---|---|---|
| 2006 | $59,750 | $408,820 | $468,570 |

34.   The defendants identified in ¶¶15-16, 24-26 are referred to herein as the "Officer Defendants."   The defendants identified in ¶¶15, 17-24, 27-33 are referred to herein as the "Director Defendants."   The defendants identified in ¶¶17-19, 21, 27-29 are referred to herein as the "Audit Committee Defendants."   Collectively, the defendants identified in ¶¶15-33 are referred to herein as the "Individual Defendants."

- 19 -

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

35.     By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and owe UnitedHealth and its stockholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage UnitedHealth in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of UnitedHealth and not in furtherance of their personal interest or benefit.

36.     To discharge their duties, the officers and directors of UnitedHealth were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of UnitedHealth were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations;

(b)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and refrain from engaging in deceptive or fraudulent conduct;

(c)     ensure processes were in place for maintaining the integrity and reputation of the Company and reinforcing a culture of ethics, compliance, and appropriate risk management;

(d)     conduct the affairs of the Company in an efficient, business-like

manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(e)     remain informed as to how UnitedHealth conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws; and

(f)     truthfully and accurately guide investors and analysts as to the business operations of the Company at any given time.

**Additional Duties of the Audit Committee Defendants**

37.     In addition to these duties, under its Charter in effect since at least 2004, the Audit Committee Defendants, defendants Burke, Ballard, Hooper, Renwick, Darretta, Johnson, and Kean, owed specific duties to UnitedHealth to assist the Board in overseeing the integrity of the Company's financial statements and the Company's compliance with legal and regulatory requirements.  More, in assisting the Board in oversight, the Audit Committee Defendants were required to consider "regulatory matters brought to the attention of the [Audit] Committee that may have a material impact on the financial statements and related reserve positions," and "[d]iscuss with management … significant business/financial risks and exposures and the Company's guidelines and policies for assessing and managing these risks and exposures."

- 21 -

**Breaches of Duties**

38.     Each Individual Defendant, by virtue of his or her position as an officer and/or director, owed to the Company the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of UnitedHealth, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware or reckless in not being aware posed a risk of serious injury to the Company.  The conduct of the Individual Defendants who were also officers and/or directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised all of UnitedHealth's Board during the time of the misconduct.

39.     The Individual Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to engage in improper practices that perpetrated billions of dollars of fraud on the government, and caused UnitedHealth to incur substantial damage.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

40.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or

design.   In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

41.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that: (i) deceived and exploited the government by making hundreds of thousands of false claims to Medicare; and (ii) enhanced their executive and directorial positions at UnitedHealth and the profits, power, and prestige that they enjoyed as a result of holding these positions.   The Individual Defendants, collectively and individually, took the actions set forth herein.

42.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment; and to conceal adverse information concerning the Company's operations.

43.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly defraud the government for over a decade.   Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

44.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.   In taking such actions to

substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## OVERVIEW OF UNITEDHEALTH'S BUSINESS AND THE COMPANY'S RISK ADJUSTMENT REPORTING REQUIREMENTS

45.    UnitedHealth is the largest MA Organization in the United States.  The Company's total consolidated revenues are comprised of approximately 25%-30% in revenues from CMS annually, equating to tens of billions of dollars per year.

46.    As an MA Organization, UnitedHealth contracts with CMS to offer beneficiaries a private plan alternative to the original Medicare program, and the Company is paid a predetermined monthly amount by Medicare for each enrolled beneficiary.  These monthly payments are "risk adjusted" to reflect each enrolled beneficiary's health status and projected spending for Medicare-covered services. Beneficiaries with more numerous and/or more severe health problems receive higher "risk scores" and, in turn, Medicare pays higher monthly amounts for these patients.

47.    This payment model provides a powerful incentive for MA Organizations such as UnitedHealth to boost their profits by over-reporting diagnosis codes and exaggerating the expected healthcare costs for their enrollees.  Thus, in attempt to combat exaggerated reporting and the commensurate over-payments by Medicare, the government requires that submitted diagnoses must be unambiguously supported and

validated by the beneficiaries' medical records.[4]   Further, each MA Organization must "[a]dopt and implement an effective compliance program, which must include measures that prevent, detect, and correct non-compliance with CMS' program requirements as well as measures that prevent, detect, and correct fraud, waste, and abuse."[5]   The compliance program "must, at a minimum, include [certain] core requirements," including effective monitoring and audits, effective establishment and implementation of procedures for responding to compliance issues, and timely inquiry and self-reporting of potential misconduct.   Specifically, among other things, MA Organizations are responsible for the following core compliance requirements:

> (F) ***Establishment and implementation of an effective system for routine monitoring and identification of compliance risks***. The system should include ***internal monitoring and audits*** and, as appropriate, external audits, to evaluate the MA organization['s], including first tier entities', ***compliance with CMS requirements and the overall effectiveness of the compliance program***.

> (G) ***Establishment and implementation of procedures and a system for promptly responding to compliance issues as they are raised***, investigating potential compliance problems as identified in the course of self-evaluations and audits, ***correcting such problems promptly and thoroughly to reduce the potential for recurrence***, and ***ensuring ongoing compliance with CMS requirements***.

>> (1) If the MA organization discovers evidence of misconduct related to payment or delivery of items or services under the contract, it must conduct a timely, reasonable inquiry into that conduct.

---

[4] *See* 65 FR 40170-01 at 40264 (June 29, 2000)

[5] 42 C.F.R. §422.503(b)(4)(vi) (Part C); 42 C.F.R. §423.504(b)(4)(vi) (Part D).

(2) ***The MA organization must conduct appropriate corrective actions (for example, repayment of overpayments***, disciplinary actions against responsible employees) in response to the potential violation referenced in paragraph (b)(4)(G)(1) of this section.

(3) ***The MA organization should have procedures to voluntarily self-report potential fraud or misconduct*** related to the MA program to CMS or its designee.

48.    In addition, MA Organizations must submit all risk adjustment data, including diagnoses, to CMS using CMS' Risk Adjustment Processing System ("RAPS"). Federal regulations require MA Organizations (through their CEO or CFO)[6] to expressly certify that the diagnosis codes and risk adjustment data provided to Medicare are accurate, complete, and truthful.[7]  Further, as explained by the DOJ, "MA Organizations are responsible for deleting RAPS data submissions if the diagnoses that they submitted are [later discovered to be] invalid."  This "allows CMS to recalculate the beneficiaries' risk scores and ensure that the Medicare Program does not make improper risk adjustment payments to MA Organizations or that the Program recovers improper payments that were already made."

49.    The Company has repeatedly acknowledged in its annual filings with the SEC that UnitedHealth is subject to significant government regulation and that "[i]n the event that [UnitedHealth] fail[s] to comply with, or … fail[s] to respond quickly and

---

[6] Or an individual delegated with the authority to sign on behalf of the CEO and/or CFO, and who reports directly to such officer.

[7]  Relevant federal regulations include 42 C.F.R. §422.504(l)(2); 42 C.F.R. §422.503(b)(4)(vi); and 42 C.F.R. §423.505(k).

appropriately to changes in, applicable laws, regulations and rules, [UnitedHealth's] business, results of operations, financial position and cash flows could be materially and adversely affected."  The Company has also specifically and repeatedly acknowledged in its annual filings that UnitedHealth is "subject to federal laws and regulations relating to the award, administration and performance of U.S. government contracts" and that "CMS regulates [its] businesses" which are required to "submit information relating to the health status of enrollees to CMS (or state agencies) for purposes of determining the amount of certain payments to [UnitedHealth]."  The Company further notes that "CMS also has the right to audit performance to determine compliance with CMS contracts and regulations and the quality of care given to Medicare beneficiaries," and that "government investigations, audits and reviews can result in assessment of damages, civil or criminal fines or penalties, or other sanctions, including loss of licensure or exclusion from participation in government programs."

50.     As detailed below, despite the above noted unambiguous requirements, for over a decade the Board utterly failed to implement adequate internal controls to ensure the Company's compliance with CMS and other federal rules and regulations.  Instead, the Board created a culture of lawlessness that promoted rampant, fraudulent Medicare billing, ensured that overbilling would not likely be flagged in the Company's internal audits, and failed to report overbilling that was actually flagged in the Company's internal audits.

## THE DOJ FINDS THAT UNITEDHEALTH FRAUDULENTLY OVERBILLED MEDICARE FOR OVER A DECADE

51.     In February 2017, the DOJ revealed for the first time that the government has been investigating rampant Medicare fraud at UnitedHealth for over five years, in part as a result of a whistleblower case against the Company that was filed under seal in 2011.  In May 2017, the DOJ revealed a second, similar whistleblower case against the Company that was filed in 2009, and following intervention in both whistleblower cases by the government, the DOJ filed two respective complaints against UnitedHealth in the U.S. District Court for the Central District of California on and May 1, 2017 and May 16, 2017 (the "DOJ Complaints").  The DOJ Complaints seek to recover treble damages and civil penalties under the FCA, as well as restitution and common law damages, for monies unlawfully obtained and/or retained from Medicare by UnitedHealth and several of the Company's subsidiaries.  According to the DOJ, the government "conservatively estimated" that *UnitedHealth wrongfully submitted hundreds of thousands of improper diagnoses to CMS*, and as a result of the Company's fraudulent practices, *Medicare was duped into paying UnitedHealth* "*at least over a billion dollars in risk adjustment payments to which United[Health] was not entitled*."

52.     The DOJ's multi-year investigation included a detailed review of numerous internal UnitedHealth documents, e-mails between various members of senior

management and executives, and interviews of several of the Company's fiduciaries.[8] The investigation revealed that senior executives at UnitedHealth have known for approximately a decade that the Company was fraudulently overbilling Medicare on a massive scale. Indeed, for years both UnitedHealth and CMS have closely tracked the risk scores for Medicare beneficiaries cared for by the Company's providers. As a result, for years CMS audits and the Company's own data have repeatedly confirmed that several of the Company's providers routinely reported "risk scores that were significantly above the norm." Worse, it was well known that many of these "significantly above the norm" risk scores were in fact invalid. Indeed, beginning no later than 2005, "CMS' medical record reviews showed that approximately *30 percent* of the provider-reported diagnoses were invalid" and that numerous of the Company's providers were "reporting codes that were just plain wrong."

53. Similarly, by no later than 2008, "[the Company's] own medical record reviews had confirmed that fact [that about 30% of the Company's provider-reported diagnoses were invalid]." For example, during 2007 and 2008, UnitedHealth implemented an Internal Data Validation ("IDV") Program to determine if the physicians'

---

[8] Among other fiduciaries, during its investigation the DOJ appears to have interviewed: Jeffrey Dumcum, UnitedHealth's Vice President of Finance; Stephanie Will, who designed risk adjustment programs and joined UnitedHealth as the Program Manager for UnitedHealth's national Chart Review Program; Pam Holt, the Manager of UnitedHealth's Provider Outreach for its Risk Adjustment Program; Pam Leal, UnitedHealth's Regional Vice President for Market Consultation; Steve Nelson, CEO of UnitedHealthcare Medicare & Retirement; and defendant Hemsley, UnitedHealth's CEO.

medical records supported the diagnoses that they reported to the Company, which UnitedHealth in turn submitted to Medicare for risk adjustment payments.  Of the diagnoses evaluated at the time, approximately *30%* were invalid.

54.   Senior management at UnitedHealth thereafter repeatedly attempted to warn the Company's executives about UnitedHealth's rampant fraudulent billing, and fix the problem, to no avail.  For example, beginning in about 2008 and continuing for several years thereafter, UnitedHealth's Vice President of Finance made several presentations to various UnitedHealth employees, including senior executives such as the CFO of the group that managed UnitedHealth's MA Plans, warning that "[p]rovider coding is highly inaccurate and incomplete" and that "more than 30% of coded conditions are not supported by CMS validation findings."  Nevertheless, the problem continued unabated for years.

55.   In or about 2007, UnitedHealth implemented a "very large," nationwide internal program to review patient charts (the "Chart Review Program").  Further, the Chart Review Program was not actually designed and implemented to flag improper billing, but rather to collect millions of medical records from providers, review them to "mine" for *additional* diagnoses that providers themselves did not report, and submit these additional diagnosis codes ("ADDS") to Medicare for billions of dollars of additional risk adjustment payments.  As noted by the DOJ, "[UnitedHealth] did not review the beneficiaries' medical records in good faith in order to obtain a true and accurate picture of the health status of [its] beneficiaries … or to submit truthful and accurate risk adjustment data to the Government."  Instead, the "Chart Review Program

was strictly a one-sided revenue-generating program" wherein the Company "used the results of the chart reviews to only increase government payments … while in bad faith systematically ignoring other information from the chart reviews which would have led to decreased payments."   By failing to "look both ways," the Company wrongfully generated and reported artificially inflated risk scores to improperly increase Medicare payments for hundreds of thousands of patients/beneficiaries, while at the same time knowingly retaining payments that UnitedHealth was not entitled to keep.  Even though it was designed to increase the Company's revenue, the Chart Review Program still repeatedly flagged rampant overbilling, despite several arbitrary exclusionary rules that were brazenly imposed to improperly disqualify many questionable medical records that should have been reviewed.

56.    In 2010, UnitedHealth finally took its first steps to implement a program to review claims specifically for overbilling and to improve the accuracy of the diagnosis data that the Company submitted to CMS (the "Claims Verification Program" or "CV Program").   According to the DOJ, however, the implementation of the CV Program proceeded through "a very slow, phased development," in which "senior executives authorized only a pilot test program to look at the negative results (*i.e.*, the results showing that the provider-reported diagnoses were invalid) from only a very small sample of United[Health's] chart reviews."   Further, the CV Program process was not designed to actually report errors to the government, but rather only to "save" the negative conclusions internally.

- 31 -

57.     Given the Board's lack of attention and willingness to turn a blind eye to illegal activity, the Company ultimately took over three years to develop its CV Program, and the program only reviewed a small portion of the millions of beneficiary medical records for claims verification purposes.  Nonetheless, the CV Program again concluded that roughly 30% or more of the claims billed were unsupported by medical records. Despite these findings (and, in fact, because of the negative financial implications),[9] the Company terminated the CV Program in or about May 2014.  According to the DOJ, the decision to terminate was "reported to [defendant] Hemsley" and "he supported it."  As a result of the Board's repeated failure to implement adequate compliance programs and internal controls, the Company continued to fraudulently bill Medicare thereafter, and ultimately "failed to delete at least over a billion dollars of diagnoses invalidated by its own chart review program."

## THE INDIVIDUAL DEFENDANTS CAUSE UNITEDHEALTH TO FILE MATERIALLY MISLEADING PROXY STATEMENTS

58.     As explained further below, defendants solicited stockholder votes through materially misleading proxy for statements the 2015 and 2016 fiscal years.  Defendants negligently prepared these proxies.  Plaintiff disclaims any claim or fraud or knowing wrongdoing in connection with the misleading statements in the proxies.

---

[9] Indeed, the DOJ Complaints reference several internal e-mails wherein various UnitedHealth fiduciaries discussed the hundreds of millions of dollars' worth of unverifiable claims the Company could continue to report if it ended the CV Program.

59.     On April 22, 2015, defendants Hemsley, Burke, Ballard, Hooper, Lawson, Renwick, Shine, Wilensky, and Darretta caused UnitedHealth to issue a Proxy Statement in connection with the 2015 Annual Stockholders meeting, held on June 1, 2015 (the "2015 Proxy").   In the 2015 Proxy, defendants solicited stockholder votes to, among other things, reelect themselves to the Board.   Defendants issued materially misleading statements with respect to these solicited votes.

60.     With respect to Board reelections, the 2015 Proxy stated the following in support of reelecting the current directors:

### UnitedHealth Group

We are a diversified health and well-being company whose mission is to help people live healthier lives and to make the health care system work better for everyone. ***Despite significant pressures relating to government reductions in Medicare Advantage program funding and the impacts of health care reform implementation, we achieved strong business results in 2014, including***:

    • ***Revenues increased 7% to $130.5 billion from $122.5 billion in 2013***;

    • ***Operating earnings increased 7% year-over-year to $10.3 billion***, and net earnings attributable to UnitedHealth Group common shareholders ("net earnings") remained strong at $5.6 billion and were supported by cash flows from operations of $8.1 billion;

\* \* \*

### Corporate Governance

***UnitedHealth Group is committed to meeting high standards of ethical behavior, corporate governance and business conduct in everything we do, every day***.

\* \* \*

**Enterprise-Wide Risk Oversight**

Our Board of Directors, assisted by its committees, oversees management's enterprise-wide risk management activities. Risk management activities include assessing and taking actions necessary to manage risk incurred in connection with the long-term strategic direction and operation of our business.

\* \* \*

**Compliance and Ethics**

*We strongly encourage employees to raise ethics and compliance concerns, including concerns about accounting, internal controls or auditing matters*. We offer several channels for employees and third parties to report ethics and compliance concerns or incidents, including by phone or online, and individuals may choose to remain anonymous in jurisdictions where anonymous reporting is permissible. We prohibit retaliatory action against any individual who in good faith raises concerns or questions regarding ethics and compliance matters or reports suspected violations. We train all employees and periodically advise them regarding the means by which they may report possible ethics or compliance issues and their affirmative responsibility to report any possible issues. In our 2014 employee survey, 97% of employees said they knew what to do if they believed unethical behavior or misconduct occurred in their work area.

\* \* \*

**Risk Oversight**

*Enterprise-Wide Risk Oversight*

*Our Board of Directors oversees management's enterprise-wide risk management activities*. Risk management activities include *assessing and taking actions necessary to manage risk* incurred in connection with the long-term strategic direction and operation of our business. Each director on our Board is required to have risk oversight ability for each skill and attribute the director possesses that is reflected in the collective skills section of our director skills matrix described in "Proposal 1 — Election of Directors — Director Nomination Process — Criteria for Nomination to the Board" above. Collectively, our Board of Directors uses its committees to assist in its risk oversight function as follows:

> • *The Audit Committee oversees management's internal controls and compliance activities*. The Audit Committee also oversees

management's processes to identify and quantify material risks facing the Company, including risks disclosed in the Company's Annual Report on Form 10-K. The enterprise risk management function, which reports to the Chief Accounting Officer, assists the Company in identifying and assessing the Company's material risks. The Company's General Auditor, who reports to the Audit Committee, assists the Company in evaluating risk management controls and methodologies. The Chief Accounting Officer and General Auditor provide periodic reports to the Audit Committee. In connection with its risk oversight role, the Audit Committee regularly meets privately with representatives from the Company's independent registered public accounting firm and the Company's CFO, General Auditor and Chief Legal Officer;

\* \* \*

*Audit Committee*

The Audit Committee consists of Messrs. Renwick (Chair) and Darretta and Ms. Hooper, each of whom is an independent director under the NYSE listing standards and the SEC rules. The Board of Directors has determined that Messrs. Renwick and Darretta and Ms. Hooper are "audit committee financial experts" as defined by the SEC rules. The Audit Committee has responsibility for the selection and retention of the independent registered public accounting firm and *assists the Board of Directors by overseeing financial reporting and internal controls and public disclosure*. *The Audit Committee reviews and assesses the effectiveness of the Company's policies, procedures and resource commitment in the areas of compliance, ethics*, privacy and data security, by interacting with the leadership and management responsible for these functions. The Audit Committee also *oversees management's processes to identify and quantify material risks facing the Company*. The Audit Committee *establishes procedures concerning the receipt, retention and treatment of complaints regarding accounting, internal accounting controls and auditing matters*. The Audit Committee operates as a direct line of communication between the Board of Directors and our independent registered public accounting firm, as well as our internal audit, compliance and legal personnel. The Audit Committee held ten meetings in 2014.

61.    Defendants' statements misleadingly suggested that the Board: (i) facilitated increased revenues, earnings, and strong business results despite government reductions in Medicare Advantage program funding; (ii) maintained "high standards of ethical

behavior, corporate governance and business conduct," implemented adequate compliance controls, and "strongly encourage employees to raise ethics and compliance concerns" to mitigate wrongdoing and apprise the Board of significant risks; and (iii) promoted prudent risk management practices.  The 2015 Proxy omitted any disclosures regarding: (i) known longstanding deficiencies in UnitedHealth's internal controls; (ii) the Company's decade-long scheme to wrongfully overbill Medicare; and (iii) the fact that a significant portion of the Company's revenues were generated through fraudulent Medicare billing.  In addition, the 2015 Proxy omitted any disclosures reflecting or acknowledging that the Company routinely ignored red flags concerning its improper billing practices.

62.    The 2015 Proxy harmed UnitedHealth by interfering with the proper governance on its behalf that follows the free and informed exercise of the stockholders' right to vote for directors.   As a result of the Individual Defendants' misleading statements in the 2015 Proxy, UnitedHealth's stockholders voted to reelect defendants Hemsley, Burke, Ballard, Hooper, Lawson, Renwick, Shine, Wilensky, and Darretta to UnitedHealth's Board.

63.    On April 22, 2016, defendants Hemsley, Burke, Ballard, Hooper, Lawson, Renwick, Shine, Wilensky, and Darretta caused UnitedHealth to issue a Proxy Statement in connection with the 2016 Annual Stockholders meeting, held on June 6, 2016 (the "2016 Proxy").  In the 2016 Proxy, defendants solicited stockholder votes to, among other things, reelect themselves to the Board.  Defendants issued materially misleading statements with respect to these solicited votes.

64.     With respect to Board reelections, the 2016 Proxy stated the following in

support of reelecting the current directors:

**Business Results**

We are a diversified health and well-being company whose mission is to
help people live healthier lives and to make the health system work better
for everyone. *We achieved strong business results in 2015*, including:

> • *Revenues increased 20% to $157.1 billion from $130.5 billion in
> 2014*;

> • *Operating earnings increased 7% year-over-year to $11.0 billion*,
> and net earnings attributable to UnitedHealth Group common
> shareholders remained strong at $5.8 billion and were supported by
> cash flows from operations of $9.7 billion;

*   *   *

**Corporate Governance**

*UnitedHealth Group is committed to meeting high standards of ethical
behavior, corporate governance and business conduct in everything we
do, every day*.

*   *   *

**Enterprise-Wide Risk Oversight**

*Our Board of Directors, assisted by its committees, oversees
management's enterprise-wide risk management activities*. Risk
management activities include assessing and taking actions necessary to
mitigate and manage risk incurred in connection with the long-term
strategic direction and operation of our business.

*   *   *

**CORPORATE GOVERNANCE**

**Overview**

*UnitedHealth Group is committed to high standards of corporate
governance and ethical business conduct*.

*   *   *

## Compliance and Ethics

***We strongly encourage employees to raise ethics and compliance concerns, including concerns about accounting, internal controls or auditing matters***. We offer several channels for employees and third parties to report ethics and compliance concerns or incidents, including by telephone or online, and individuals may choose to remain anonymous in jurisdictions where anonymous reporting is permissible. We prohibit retaliatory action against any individual who in good faith raises concerns or questions regarding ethics and compliance matters or reports suspected violations. We train all employees and periodically advise them regarding the means by which they may report possible ethics or compliance issues and their affirmative responsibility to report any possible issues. In our 2015 employee survey, 97% of employees said they knew what to do if they believed unethical behavior or misconduct occurred in their work area.

\* \* \*

## Risk Oversight

### Enterprise-Wide Risk Oversight

Our Board of Directors oversees management's enterprise-wide risk management activities. Risk management activities include assessing and taking actions necessary to manage risk incurred in connection with the long-term strategic direction and operation of our business. Each director on our Board is required to have risk oversight ability for each skill and attribute the director possesses that is reflected in the collective skills section of our director skills matrix described in "Proposal 1 — Election of Directors — Director Nomination Process — Criteria for Nomination to the Board" above. Collectively, our Board of Directors uses its committees to assist in its risk oversight function as follows:

• The Audit Committee oversees management's internal controls and compliance activities. The Audit Committee also oversees management's processes to identify and quantify material risks facing the Company, including risks disclosed in the Company's Annual Report on Form 10-K. The enterprise risk management function assists the Company in identifying and assessing the Company's material risks. The Company's General Auditor, who reports to the Audit Committee, assists the Company in evaluating risk management controls and methodologies. The Audit Committee receives periodic reports on the enterprise risk management function. In connection with its risk oversight role, the

Audit Committee regularly meets privately with representatives from the Company's independent registered public accounting firm and the Company's CFO, General Auditor and Chief Legal Officer;

\* \* \*

**Audit Committee**

**Committee Members:**

Glenn M. Renwick (Chair), Robert J. Darretta and Michele J. Hooper

**Primary Responsibilities:**

The Audit Committee has responsibility for the selection and retention of the independent registered public accounting firm and *assists the Board of Directors by overseeing financial reporting and internal controls and public disclosure*. *The Audit Committee reviews and assesses the effectiveness of the Company's policies, procedures and resource commitment in the areas of compliance, ethics*, privacy and data security, by interacting with personnel responsible for these functions. The Audit Committee also *oversees management's processes to identify and quantify material risks facing the Company*. The Audit Committee *establishes procedures concerning the receipt, retention and treatment of complaints regarding accounting, internal accounting controls and auditing matters*. The Audit Committee operates as a direct line of communication between the Board of Directors and our independent registered public accounting firm, as well as our internal audit, compliance and legal personnel.

65.     Defendants' statements misleadingly suggested that the Board: (i) facilitated increased revenues, earnings, and strong business results despite government reductions in Medicare Advantage program funding; (ii) maintained "high standards of ethical behavior, corporate governance and business conduct," implemented adequate compliance controls, and "strongly encourage employees to raise ethics and compliance concerns" to mitigate wrongdoing and apprise the Board of significant risks; and (iii) promoted prudent risk management practices.  The 2016 Proxy omitted any disclosures regarding: (i) known longstanding deficiencies in UnitedHealth's internal controls; (ii) the

- 39 -

Company's decade-long scheme to wrongfully overbill Medicare; and (iii) the fact that a significant portion of the Company's revenues were generated through fraudulent Medicare billing.  In addition, the 2016 Proxy omitted any disclosures reflecting or acknowledging that the Company routinely ignored red flags concerning its improper billing practices.

66. The 2016 Proxy harmed UnitedHealth by interfering with the proper governance on its behalf that follows the free and informed exercise of the stockholders' right to vote for directors.  As a result of the Individual Defendants' misleading statements in the 2016 Proxy, UnitedHealth's stockholders voted to reelect defendants Hemsley, Burke, Ballard, Hooper, Lawson, Renwick, Shine, Wilensky, and Darretta to UnitedHealth's Board.

## DAMAGES TO UNITEDHEALTH

67. As a result of the Individual Defendants' improprieties, for more than a decade UnitedHealth fraudulently and brazenly overbilled Medicare by more than a billion dollars according to the government's "conservative estimate[s]," in violation of the FCA.  Under the FCA, the United States is entitled to *treble* damages, plus a civil penalty of not less than $5,500 (and not more than $21,916) for *each* of the Company's hundreds of thousands of FCA violations.

68. UnitedHealth's illegal practices and gross failures to timely address, remedy, or even disclose such practices also severely damaged its reputation with its largest customer, the U.S. Government.  Given the Company's longstanding failure to prevent Medicare fraud, curb known abuses, and implement adequate controls to ensure

illegal practices are timely discovered and properly addressed, the government may revoke certain licenses from UnitedHealth or exclude the Company from participation in government programs.  UnitedHealth's largest source of revenue is now impaired.

69.     Further, as a direct and proximate result of the Individual Defendants' actions, UnitedHealth has expended, and will continue to expend, significant sums of money.  Such expenditures include, but are not limited to:

(a)     costs incurred from defending and paying any settlement or judgment in the DOJ actions; and

(b)     costs incurred from compensation and benefits paid to the defendants who have breached their duties to UnitedHealth.

## **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

70.     Plaintiff brings this action derivatively in the right and for the benefit of UnitedHealth to redress injuries suffered, and to be suffered, by UnitedHealth as a direct result of violation of securities law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.   UnitedHealth is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

71.     Plaintiff will adequately and fairly represent the interests of UnitedHealth in enforcing and prosecuting its rights.

72.    Plaintiff was a stockholder of UnitedHealth at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current UnitedHealth stockholder.

73.    The current Board of UnitedHealth consists of the following nine individuals: defendants Hemsley, Burke, Ballard, Hooper, Lawson, Renwick, Shine, and Wilensky, and non-defendant Timothy P. Flynn.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Demand Is Excused Because Defendants Hemsley, Burke, Ballard, Hooper, Lawson, Renwick, Shine, and Wilensky Face a Substantial Likelihood of Liability for Their Misconduct**

74.    The principal duty of the Board is to ensure that the Company operates in compliance with all applicable laws and regulations.   Defendants Hemsley, Burke, Ballard, Hooper, Lawson, Renwick, Shine, and Wilensky face a substantial likelihood of liability for repeatedly failing to comply with this duty.

75.    As alleged above, eight of the nine current Board members, including Director Defendants Hemsley, Burke, Ballard, Hooper, Lawson, Renwick, Shine, and Wilensky, violated section 14(a) of the Exchange Act by negligently making the misstatements and omissions in the 2015 Proxy and 2016 Proxy (collectively, the "Proxies").   Accordingly, demand is excused because a majority of the Board faces a substantial likelihood of liability.

76.    These same Director Defendants have for years knowingly failed to implement an effective compliance program, including by failing to implement measures

that prevent, detect, and correct non-compliance with CMS' program requirements as well as measures that prevent, detect, and correct fraud, waste, and abuse.  In fact, as discussed above, the Company's compliance programs were actually designed to ignore improper coding, and instead only look for ways to increase billing.  Further, when the Company finally implemented a program that reliably identified improper billing, the program was designed to only report the results internally, and not to CMS.  In any event, with the acquiescence of the Board and defendant Hemsley's express consent, the program was terminated so the Company could continue to fraudulently bill hundreds of millions of dollars to CMS annually.

77.     At best, defendants Hemsley, Burke, Ballard, Hooper, Lawson, Renwick, Shine, and Wilensky directly or tacitly approved a company-wide culture that promoted and incentivized improper Medicare billing, and then turned a blind eye to the devastating consequences by utterly failing to implement a reasonable information and reporting system to ensure information concerning widespread and well-known fraudulent activity within UnitedHealth was timely shared with the Board.

78.     Plaintiff has not made any demand on the other stockholders of UnitedHealth to institute this action since such demand would be a futile and useless act for at least the following reasons:

(a)     UnitedHealth is a publicly held company with over 963 million shares outstanding and thousands of stockholders;

- 43 -

(b)     making demand on such a number of stockholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of stockholders; and

(c)     making demand on all stockholders would force plaintiff to incur excessive expenses, assuming all stockholders could be individually identified.

## COUNT I

**Against Defendants Hemsley, Burke, Ballard, Hooper, Lawson, Renwick, Shine, Wilensky, and Darretta for Violation of Section 14(a) of the Exchange Act**

79.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

80.     The section 14(a) Exchange Act claims alleged herein are based solely on negligence.  They are not based on any allegation of reckless or knowing conduct by or on behalf of defendants Hemsley, Burke, Ballard, Hooper, Lawson, Renwick, Shine, Wilensky, and Darretta.  The section 14(a) Exchange Act claims alleged herein do not allege and do not sound in fraud.  Plaintiff specifically disclaims any allegation of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to the non-fraud claims.

81.     Defendants Hemsley, Burke, Ballard, Hooper, Lawson, Renwick, Shine, Wilensky, and Darretta negligently issued, caused to be issued, and participated in the issuance of materially misleading written statements to stockholders which were contained in the Proxies.  The Proxies contained proposals to UnitedHealth's stockholders urging stockholders to reelect the members of the Board.  The Proxies, however,

misrepresented and failed to disclose that: (i) there were well-known longstanding deficiencies in UnitedHealth's internal controls; (ii) the Company had engaged in a decade-long scheme to wrongfully overbill Medicare; and (iii) a significant portion of the Company's reported revenues were generated through fraudulent Medicare billing.  In addition, the Proxies omitted any disclosures reflecting or acknowledging that the Company routinely ignored red flags concerning its improper billing practices, and utterly lacked an appropriate reporting structure.

82.    By reasons of the conduct alleged herein, defendants Hemsley, Burke, Ballard, Hooper, Lawson, Renwick, Shine, Wilensky, and Darretta violated section 14(a) of the Exchange Act.  As a direct and proximate result of these Director Defendants' wrongful conduct, UnitedHealth misled and/or deceived its stockholders by making misleading statements that were an essential link in stockholders heeding UnitedHealth's recommendation to reelect the current Board.

83.    The misleading information contained in the Proxies was material to UnitedHealth's stockholders in determining whether or not to elect the defendants, approve certain executive compensation, and determine whether the Company should adopt a policy to require an independent Chairman.  This information was also material to the integrity of the directors that were proposed for election to the Board.  The proxy solicitation process in connection with the Proxies were essential links in the reelection of nominees to the Board.

84.     Plaintiff, on behalf of UnitedHealth, thereby seeks relief for damages inflicted upon the Company based upon the misleading Proxies in connection with the improper reelection of the members of the Board.

## COUNT II

### Against the Individual Defendants for Breach of Fiduciary Duty

85.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.     The Individual Defendants owed and owe UnitedHealth fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe UnitedHealth the highest obligation of good faith, fair dealing, loyalty, and due care.

87.     The Individual Defendants and each of them, violated and breached their fiduciary duties of candor, good faith, and loyalty.  More specifically, the Individual Defendants violated their duty of good faith by creating a culture of lawlessness within UnitedHealth, and/or consciously failing to prevent to Company from engaging for over a decade in the unlawful acts complained of herein.

88.     The Officer Defendants either knew, were reckless, or were grossly negligent in disregarding the illegal activity of such substantial magnitude and duration. The Officer Defendants either knew, were reckless, or were grossly negligent in not knowing: (i) UnitedHealth lacked adequate compliance programs to ensure proper Medicare billing; (ii) UnitedHealth's so-called compliance programs were actually designed to overbill Medicare; (iii) UnitedHealth engaged in rampant fraudulent

Medicare billing for over a decade; and (iv) the Company's Medicare related revenues have long been grossly overstated.  Accordingly, the Officer Defendants breached their duty of care and loyalty to the Company.

89.     Director Defendants, as directors of the Company, owed UnitedHealth the highest duty of loyalty.  These defendants breached their duty of loyalty by recklessly permitting the improper activity to continue for over a decade.  The Director Defendants knew or were reckless in not knowing that:  (i) UnitedHealth lacked adequate compliance programs to ensure proper Medicare billing; (ii) UnitedHealth's so-called compliance programs were actually designed to overbill Medicare; (iii) UnitedHealth engaged in rampant fraudulent Medicare billing for over a decade; and (iv) the Company's Medicare related revenues have long been grossly overstated.  Accordingly, the Director Defendants breached their duty of loyalty to the Company.

90.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, UnitedHealth has sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

91.     Plaintiff, on behalf of UnitedHealth, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Waste of Corporate Assets

92.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

- 47 -

93.     As a result of the wrongdoing detailed herein and by failing to conduct proper supervision, the Individual Defendants have caused UnitedHealth to waste its assets by repeatedly violating the FCA and subjecting the Company to treble damages and civil penalties, and by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty.

94.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

95.     Plaintiff, on behalf of UnitedHealth, has no adequate remedy at law.

## COUNT IV

### Against the Individual Defendants for Unjust Enrichment

96.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

97.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of UnitedHealth.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to UnitedHealth.

98.     Plaintiff, as a stockholder and representative of UnitedHealth, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

99.     Plaintiff, on behalf of UnitedHealth, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of UnitedHealth, demands judgment as follows:

A.      Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' violation of securities law, breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

B.      Directing UnitedHealth to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect UnitedHealth and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following Corporate Governance Policies:

1.      a proposal to strengthen Board oversight and supervision of UnitedHealth's Medicare billing practices;

2.      a proposal to ensure that all Board members take appropriate action to rid the Company of its lawless culture, particularly with respect to Medicare billing;

3.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

4.      a provision to permit the stockholders of UnitedHealth to nominate at least three candidates for election to the Board; and

5.      a proposal to strengthen UnitedHealth's oversight of its disclosure procedures;

C.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of UnitedHealth has an effective remedy;

D.      Awarding to UnitedHealth restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

E.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Dated: July 24, 2017                    Respectfully submitted,

                                        **GUSTAFSON GLUEK PLLC**

                                        *s/ Daniel C. Hedlund*
                                        Daniel E. Gustafson (#202241)
                                        Daniel C. Hedlund (#258337)
                                        David A. Goodwin (#386715)
                                        Daniel J. Nordin (#0392393)
                                        Canadian Pacific Plaza
                                        120 South 6th Street, Suite 2600
                                        Minneapolis, MN 55402
                                        Telephone: (612) 333-8844

Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
    dhedlund@gustafsongluek.com
    dgoodwin@gustafsongluek.com
    dnordin@gustafsongluek.com

**ROBBINS ARROYO LLP**
Brian J. Robbins (*pro hac vice forthcoming*)
George C. Aguilar (*pro hac vice forthcoming*)
Ashley R. Rifkin (*pro hac vice forthcoming*)
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
    gaguilar@robbinsarroyo.com
    arifkin@robbinsarroyo.com

*Attorneys for Plaintiff*

1192972

VERIFICATION

I, John Brewer, hereby declare as follows:

I am the Executive Director of the Fireman's Retirement System of St. Louis, the plaintiff in the within entitled action. I have read the Verified Stockholder Derivative Complaint for Violation of Securities Law, Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment on behalf of UnitedHealth Group Incorporated. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated:  7-21-17

_____
JOHN BREWER